Filed 7/21/26  In re C.S. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re C.S., a Person Coming Under the Juvenile Court Law. | B340622<br><br>(Los Angeles County Super. Ct. Nos. 22LJJP00183, 22LJJP00183C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br>        Plaintiff and  Respondent.<br><br>        v.<br><br>A.S.,<br><br><br><br>        Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Jacklyn K. Louie, Assistant County Counsel, Kimberly Roura, Principal Deputy County Counsel, for Plaintiff and Respondent.

---

## INTRODUCTION

Athena S. (mother) filed a petition for modification under Welfare and Institutions Code section 388,[1] asking the juvenile court to return her minor child to her care or grant her reunification services with him. The juvenile court denied her petition. Mother now appeals, arguing the court abused its discretion in denying her petition.[2] We find no abuse of discretion and affirm.

As the parties are familiar with the facts and procedural history of the case, we do not restate those details in full here. Below, we discuss only the facts and history as needed to resolve—and provide context for—the issues presented on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father had three children together: D.S. (born 2005), A.S. (born 2007), and C.S. (born 2009). The family had a long history of involvement with the Los Angeles County Department of Children and Family Services (Department). As relevant here, in 2015, the juvenile court sustained allegations of alcohol abuse by mother stemming from an arrest for driving under the influence with all three children in the car. In 2017, the juvenile court again sustained allegations of alcohol abuse by mother and ordered her to participate in a 12-step program and obtain a sponsor to help

---

[1]    All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

[2]    Father is not a party to this appeal.

2

her maintain her sobriety.  Mother failed to obtain a sponsor or attend Alcoholics Anonymous (AA) meetings.

The family again came to the Department's attention in 2022, when D.S. violently attacked mother in the family home.   When interviewed by the Department, D.S. reported repeated physical and sexual abuse by mother beginning when he was 11 years old.  D.S. said he attacked his mother because he saw her sleeping in the same bed as his younger brother, C.S., and believed she was abusing him as well.  In response, the Department filed a section 300 petition in May 2022, initiating the dependency proceedings that give rise to this appeal.  The petition alleged mother sexually abused D.S., and that her past and present alcohol abuse—as well as unresolved mental health issues—left her unable to care for the three children.

Mother adamantly denied the allegations of sexual abuse but admitted that she relapsed approximately two years ago and was now regularly drinking alcohol.  She admitted that she struggled with alcoholism and drank shots of vodka in the morning and sometimes throughout the day.  Mother also reported drinking between one and three pints (the equivalent of approximately 8 to 24 servings) of alcohol daily.  Mother admitted she used alcohol to self-medicate but claimed her drinking did not interfere with her ability to care for her children.

A psychological examination revealed that mother's alcoholism caused her to sleep "most of the day," which interfered with her ability to supervise the children and contributed to their poor attendance and performance at school.  The psychologist was troubled by mother's history of alcoholism, unsuccessful attempts at maintaining her sobriety, and tendency to minimize the effect of alcoholism on her parenting capacity.  The children's maternal

grandmother also confirmed mother's struggles with alcoholism interfered with mother's ability to get the children to school in the morning.

The juvenile court sustained the allegations against mother and removed A.S. and C.S. from her care and placed them with relatives.[3] The court denied mother's request for reunification services, concluding she had not made substantial progress in mitigating the causes that necessitated removing the children from her care.

In April 2023, mother filed a petition under section 388, asking the juvenile court to either return C.S. to her care or grant her reunification services with him. In her petition, mother argued she completed an outpatient program for substance abuse and several sessions of counseling related to child sexual abuse awareness. In December 2023, the juvenile court granted mother's request for reunification services with A.S., but denied any relief as to C.S. As part of its ruling, the juvenile court ordered mother to undergo weekly testing for alcohol with "no missed or dirty tests," and participate in a 12-step program "with a court card and sponsor."

In April 2024, mother filed a second petition under section 388, again seeking reunification services with C.S. or to have him returned to her care. In response, the Department acknowledged that mother was making progress, but noted that she had missed 4 of her 20 scheduled alcohol tests between January 2024 and May 2024.[4] It also noted that mother admitted

---

[3]    D.S. was arrested for his role in the physical altercation with mother and was in custody at the time of the disposition hearing.

[4]    Mother had a long history of inconsistent attendance for testing. For example, the record shows mother missed 11 of her 19 scheduled tests between June 20, 2023, and October 17, 2023. Mother also missed two of six scheduled tests between July 2024 and August 2024.

she did not have a sponsor and was not participating in a 12-step program or regularly attending AA meetings.[5]  Based on these facts, the Department argued mother was not putting in the necessary effort to prevent another relapse.

The Department also argued that C.S. was diagnosed with autism and had special needs, and that mother was already struggling to meet her own needs.  It argued that having responsibility for meeting C.S.'s needs would add additional stress to mother's life, putting her at further risk of relapse.  It noted that C.S. was thriving with maternal grandmother, was receiving all necessary services, and that it was in his best interest to remain in his grandmother's care.

When interviewed by the Department, C.S. said he did not want to live with mother in her current home because he would not have his own bedroom and that he preferred to stay in his current placement.  Mother agreed that her home was too small to have C.S. returned to her care and told the Department that she preferred to have her request for reunification services granted rather than have C.S. returned to her home.

The juvenile court denied mother's petition in September 2024, echoing the Department's concerns about mother's ability to maintain her sobriety and meet C.S.'s needs.  However, the juvenile court acknowledged that mother had made progress in addressing the circumstances that led to the sustained allegations against her and stated that if she was "able to maintain her sobriety and do what she needs to do for an extended period of time," she could bring another petition under section 388.

---

[5]     The Department also noted that, while mother claimed to have worked on a 12-step program as part of the outpatient substance abuse treatment program she completed, she was unable to recite the 12 steps.

Mother timely appealed the denial of her section 388 petition.

## DISCUSSION

I.  *Legal Standards*

Section 388 allows a parent to petition to change, modify, or set aside any previous juvenile court order.  (§ 388, subd. (a).)  "To obtain an evidentiary hearing on a section 388 petition, a parent must make a prima facie showing that circumstances have changed since the prior court order, and that the proposed change will be in the best interests of the child.  [Citations.]"  (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478 (*Alayah J.*).)  The parent petitioning under section 388 has the burden of establishing both prongs by a preponderance of the evidence.  (*In re J.M.* (2020) 50 Cal.App.5th 833, 845.)

"To support a section 388 petition, the change in circumstances must be substantial."  (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 (*Ernesto R.*).)  A petition that only shows changing—not changed—circumstances is insufficient to require an evidentiary hearing.  (*Ibid.*; *In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)  The fact that a parent "makes relatively last-minute (albeit genuine) changes" does not automatically tip the scale in the parent's favor.  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530.)

A section 388 petition may not be based on a parent's conclusory assertions.  (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 (*Anthony W.*).)  Nor is it "enough for a parent to show *just* a genuine change of circumstances under the statute.  The parent must show that the undoing of the prior order would be in the best interests of the child.  [Citation.]"  (*In re Kimberly F.*, *supra*, 56 Cal.App.4th at p. 529.)  "When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly

6

important role." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.) "After the termination of reunification services, a parent's interest in the care, custody and companionship of the child is no longer paramount. [Citation.] Rather, at this point, the focus shifts to the needs of the child for permanency and stability." (*Ibid.*)

"In determining whether [a section 388] petition makes the required showing, the court may consider the entire factual and procedural history of the case." (*In re K.L.* (2016) 248 Cal.App.4th 52, 62.) "We normally review the grant or denial of a section 388 petition for an abuse of discretion." (*Alayah J.*, *supra*, 9 Cal.App.5th at p. 478.) "A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851, citing *In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

II.    *Analysis*

Mother argues the juvenile court abused its discretion in denying her petition. Mother claims that C.S.'s removal was primarily due to concerns about her alcohol abuse, and that she established a change in circumstances because she "remained sober for two and a half years . . . without participation in AA or having a sponsor."

In moving for relief under section 388, it was mother's burden to establish a change in circumstances. Her assertion that she stopped drinking, standing alone, did not establish by a preponderance of the evidence that she had been successful in maintaining her sobriety between May 2022 and September 2024. (*Anthony W., supra,* 87 Cal.App.4th at p. 250.) Rather, the evidence before the juvenile court showed mother had an extensive history of failing to appear for her alcohol tests. A missed test,

without adequate justification, is properly considered the equivalent of a positive test. (See *In re Natalie A.* (2015) 243 Cal.App.4th 178, 186; accord *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384, disapproved of on another ground in *In re N.R.* (2023) 15 Cal.5th 520, 560, fn. 18.) Mother attempts to minimize this evidence, acknowledging only that she missed "some" tests. The record shows that between June 2023 and September 2024, mother missed at least 17 tests. The juvenile court could have properly considered each of the missed tests as positive for alcohol, contradicting mother's claim of sobriety.

Taken cumulatively, the evidence before the juvenile court established that, while mother had completed a substance abuse program and tested negative for alcohol when she appeared for testing, she also: (1) had an extensive history of alcoholism including prior relapses; (2) refused to participate in a 12-step program or obtain a sponsor despite several court orders directing her to do so; and (3) failed to test for alcohol 17 times in the approximate year leading up to the hearing on her petition. At most, this evidence shows mother's circumstances were changing, not changed. This is insufficient to entitle mother to relief under section 388. (*Ernesto R., supra,* 230 Cal.App.4th at p. 223.) We therefore find no abuse of discretion by the juvenile court in denying mother's section 388 petition.

## DISPOSITION

The juvenile court's order denying mother's section 388 petition is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


ZUKIN, P. J.


We concur:



TAMZARIAN, J.



COGLIATI, J.*

---

* Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.